UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE ANNUITY, PENSION, WELFARE,
TRAINING AND LABOR MANAGEMENT
COOPERATION TRUST FUNDS OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14-14B, AFL-CIO *ET*
*AL.*,

                          Plaintiffs,

               -against-

GRACI PAVING ASSOCIATES, INC.,

                        Defendants.
------------------------------------------------------------X

                         **REPORT AND**
                        **RECOMMENDATION**
                    25 CV 2726 (RER) (CLP)

**POLLAK**, United States Magistrate Judge:

       On May 15, 2025, plaintiffs The Annuity, Pension, Welfare, Training and Labor

Management Cooperation Trust Funds of the International Union of Operating Engineers Local

14-14B, AFL-CIO, by their Trustees Edwin L. Christian, John Cronin, Thomas D. Gordon, Hugh

Manley, Tyreef Bevel, John F. O'Hare, William Tyson and Michael Salgo ("Local 14 Funds"),

and International Union of Engineers Local 14-14B, AFL-CIO ("Local 14" or the

"Union"), by its business manager, Edwin L. Christian (together, "plaintiffs"), commenced this

action against defendant Graci Paving Associates, Inc. ("Graci" or "defendant"), pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001

*et seq.,* and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as

amended, 29 U.S.C. § 185, seeking to recover unpaid annuity, voluntary annuity, pension,

welfare, training and labor management cooperation trust fund contributions, along with dues

assessments and defense payments.  (Compl.[1]).

Despite proper service, defendant Graci failed to answer or otherwise respond to the Complaint.  (Steinberg Decl.[2] ¶ 4).  As a result of defendant's failure to respond to the Complaint, plaintiffs requested a Certificate of Default (ECF No. 9), and on June 24, 2025, the Clerk of Court entered a notation of default.  (ECF No. 10).  Thereafter, on June 27, 2025, plaintiffs filed a Motion for default judgment (Mot.[3]), which is currently pending before this Court on referral from the Honorable Ramon E. Reyes.  (ECF Order dated June 30, 2025).  For the reasons set forth below, the Court respectfully recommends that plaintiffs' Motion for default judgment be granted and that plaintiffs be awarded a total of $32,976.02 in damages and $3,375 in attorney's fees and costs.

## FACTUAL BACKGROUND

Plaintiffs Local 14 Funds are joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA.  (Compl. ¶ 4).  Local 14 Annuity and Pension Funds are employee pension benefit plans, and Local 14 Welfare and Training Funds are employee welfare benefit plans, within the meaning of Sections 3(1) and (2) of ERISA.  (Id. ¶¶ 7, 8).  Local 14 Labor Management Cooperation Trust Fund is a labor management cooperation trust fund as defined by the LMRA, 29 U.S.C. §§ 186(c)(9) and Section 501(c)(5) of the Internal Revenue Code.  (Id. ¶ 10).  Plaintiffs allege that defendant Graci is a foreign corporation duly licensed to operate in New York (Id. ¶ 14), as well as an employer within the meaning of Section 3(5) of

---

[1] Citations to "Compl." refer to plaintiffs' Complaint filed May 15, 2025 (ECF No. 1).

[2] Citations to "Steinberg Decl." refer to the Declaration of James M. Steinberg, Esq. In Support of Plaintiffs' Motion for Default Judgment, filed June 27, 2025 (ECF No. 12).

[3] Citations to "Mot." refer to plaintiff's Motion for Default Judgment, filed June 27, 2025 (ECF No 11),

ERISA and Section 301 of the LMRA (Id. ¶ 16).

Plaintiffs allege that Local 14 and Graci are parties to a collective bargaining agreement ("CBA") pursuant to which Graci agreed to remit contributions, along with dues assessment and defense fund payments based on work performed by employees covered by the CBA.  (Id. ¶¶ 17, 18).  All contributions and payments were to be remitted through the purchase of stamps from the Funds Office for plaintiffs Local 14 Funds.  (Id. ¶ 19).

Plaintiffs allege that as part of the CBA and the Trust Agreements establishing the Local 14 Funds, Graci consented to an audit to determine if it had paid all of the required contributions for the period November 1, 2022, through October 31, 2024.  (Id. ¶ 21).  On May 13, 2025, plaintiffs' auditor determined that Graci had failed to provide the contractually required contributions with interest, as well as dues assessment and defense fund payments owed for the period November 1, 2022 through October 31, 2024, in the amount of $34,025.96.  (Id. ¶ 22).  Plaintiffs allege that defendant has failed to pay any portion of the outstanding amount owed in ERISA contributions, ($30,088.20 as of the initial damages calculation, $25,401,24 as of the amended damages calculation), and in dues assessments, defense fund, and labor management cooperation trust fund payments ($2,314,35).  (Id. ¶¶ 23, 24; First Cause of Action).

Plaintiffs further contend that defendant has violated Section 515 of ERISA, 29 U.S.C. § 1145, and is liable to the Trust Funds for:  1) the amount owed in unpaid fringe benefit contributions, 2) interest on the unpaid contributions at the rate provided for in the Trust Fund Plan or, if none, at the rate set out in the Internal Revenue Code, 26 U.S.C. § 6621, 3) statutory damages, 4) attorney's fees, 5) auditor's fees, and 6) costs and disbursements.  (Compl. ¶¶ 27, 29).  Based on the violation of ERISA, plaintiffs now seek the amount of the delinquent fringe benefit contributions, as well as accumulated interest and statutory damages to be determined by

3

the Court, [4] pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.  (Id. ¶ 30; Second Cause of Action).

DISCUSSION

A.  Default Judgment

Plaintiffs move for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  Upon the plaintiffs' request, the Clerk of the Court entered a default because defendant "failed to plead or otherwise defend [against the instant Complaint]."  (ECF No. 10); Fed. R. Civ. P. 55(a).  A clerk's entry of default is not the same as a default judgment granted by the court.  Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered.  See Fed. R. Civ. P. 55(b).  In this case, the Clerk of the Court entered a default against defendant on June 24, 2025 (ECF No. 10), and the motion for default judgment was filed on June 27, 2025 (Mot.).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard."  Enron Oil Corp. v.

---

[4] Plaintiffs originally sought $34,025.96, which accounted for the delinquent fringe benefit contributions and the interest accrued on those delinquent contributions, through May 7, 2025, as well as further prejudgment interest to be determined by the Court.  (Compl. ¶ 22; Steinberg Decl., Ex. J).  However, on July 10, 2025, plaintiffs submitted an Amended Statement of Damages (ECF No. 19-2), reflecting developments, discussed further infra, that led to plaintiffs seeking damages lower than previously calculated.  The Court has also calculated, using the formulae supplied by plaintiffs, the interest that has accumulated up until and including the date of this Report and Recommendation.

<u>Diakuhara</u>, 10 F.3d at 95-96; <u>see also</u> <u>Meehan v. Snow</u>, 652 F.2d at 277.  It is well-settled that defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96; <u>see also</u> <u>Erwin DeMarino Trucking Co. v. Jackson</u>, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").  As such, courts should take great care in entering default judgment, ensuring, if at all possible, that both parties may have their cases judged on the merits.  <u>Id.</u>

A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established," "the amount of money potentially involved," and the record of attempts to involve the defaulting party in the proceedings.  <u>See</u> <u>Hirsch v. Innovation Int'l, Inc.</u>, No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted).  Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether the plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  <u>See</u> <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u>, §§ 2685, 2688 (3d ed. 1998).

B. <u>Entry of Default Judgment</u>

The benefit plans operated by plaintiffs fall under the purview of ERISA in that the Funds are run by an organization of employees with the goal of providing health and retirement benefits to members of the employee organization, in accordance with 29 U.S.C. § 1002.  ERISA specifies the types of damages to be awarded when judgments are entered in favor of benefit

plans.  See 29 U.S.C. § 1132(g)(2).  These include the following:

1. the unpaid contributions,
2. interest on the unpaid contributions,
3. an amount equal to the greater of--
   i. interest on the unpaid contributions, or
   ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
4. reasonable attorney's fees and costs of the action, to be paid by the defendant, and
5. such other legal or equitable relief as the court deems appropriate.

Id.  Plaintiffs have also alleged a claim under 29 U.S.C. § 1145, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

The Complaint asserts that, as a result of its performance of heavy construction work, defendant Graci was required to adhere to the terms and conditions of the CBA entered into between Local 14 and the General Contractors Association of New York, Inc. (the "Local 14/CGA Agreement").  (Compl. ¶¶ 17, 18; see also Steinberg Decl. ¶ 5, Ex. D).  The Local 14/CGA Agreement required Graci to contribute certain amounts to the plaintiffs, including annuity, voluntary annuity (including political action committee), pension, welfare, and training contributions, along with defense fund and dues assessment payments, and labor management cooperation trust contributions for each hour of work performed by covered employees, and to adhere to the trust agreements establishing the plaintiff funds.  (Compl. ¶ 18; Steinberg Decl. ¶ 5).  Plaintiffs further allege that pursuant to an audit authorized by the Trust Agreements and the

Local 14/GCA Agreement, it was determined that Graci had failed to remit ERISA contributions in the amount of $31,711.61, including interest in the amount of $1,623.41, and non-ERISA contributions in the amount of $2,314.35, for the period July 1, 2023, through October 31, 2024. (Compl. ¶ 22; Steinberg Decl. ¶ 6, Ex. J). Plaintiffs allege that the failure to meet these obligations warrants relief.

Accordingly, plaintiffs seek to have this Court issue an Order: 1) directing that judgment be entered for the amount of delinquent ERISA and non-ERISA contributions owed, together with interest; and 2) granting plaintiffs liquidated damages, costs, and attorney's fees. (Steinberg Decl. ¶ 10).

Pursuant to Section 515 of ERISA, Graci is required to make contributions to the Funds in accordance with the terms of the CBA. See 29 U.S.C. § 1145. Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with this inquest, including the terms of the CBA, plaintiffs have sufficiently alleged a claim that the defendant breached its statutory and contractual obligations under both ERISA and the CBA. Id.

Moreover, in this case, it is beyond dispute that defendant is in default, since defendant failed to file an answer to the Complaint, failed to oppose plaintiffs' motion for a default judgment, and failed to challenge the Clerk's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's motion for a default judgement). Despite the numerous opportunities afforded defendant, it apparently lacks interest in participating in these proceedings. Furthermore, defendant has also failed to obtain counsel, which constitutes a failure to defend because defendant, a corporation, cannot proceed pro se in federal court. See

Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Given that plaintiffs have duly served all orders and motions on defendant, and defendant has refused to attend any hearing or move in any way whatsoever with respect to the instant case, the Court finds no compelling reason to delay further in entering a default judgment. Accordingly, this Court respectfully recommends that default judgment be granted against defendant.

C. Damage Awards in Default Judgments

Once a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded allegations in the petition pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). For the purposes of an inquest, a court accepts as true all factual allegations in the petition, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. The plaintiffs still have the burden of proving damages, either by an evidentiary hearing or, should the defendant fail to appear, exhibits submitted by the plaintiffs. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988). By Order dated October 15, 2025, the Court directed defendant to submit papers on the question of damages (ECF No.

8

21).  Defendant neither submitted papers nor asked for any extensions.

    1.  <u>Contributions Owed</u>

Plaintiffs seek an award of delinquent ERISA and non-ERISA contributions, based on the results of the audit.  In his initial Declaration, Mr. Steinberg stated that plaintiffs sought damages in the amount of $30,088.20 in ERISA contributions due and owing, as well as $2,314.35 in non-ERISA contributions due and owing, plus interest accrued on each amount.  (Steinberg Decl. ¶¶ 10(a), (g)).  However, on July 10, 2025, counsel filed a supplemental Declaration of James M. Steinberg, Esq. In Further Support of Plaintiff's Motion for Default Judgment, in which he indicated that following the filing of the Motion for default judgment, plaintiffs received a partial payment for the ERISA contributions in question from Graci's general contractor Tishman Construction Corporation of New York, in the amount of $4,369.20.  (Steinberg Supp. Decl.[5] ¶ 2).  In addition, plaintiffs identified an open credit for defendant Graci in the amount of $317.76.  (<u>Id.</u>)  After applying these credits to the principal amount of the ERISA contributions deficiency, plaintiffs now seek a revised deficiency principal of $25,401.24.  (<u>Id.</u>)  The adjusted amount, along with a revised calculation of interest owed from May 8, 2025, through June 27, 2025, is set forth in an Amended Statement of Damages ("Am. Stmt.") and Amended Proposed Default Judgment, attached to Mr. Steinberg's supplemental Declaration.  (<u>Id.</u> Attachments 2, 3).

Accordingly, having reviewed the various exhibits attached to the Motion for default judgment, and the supplemental Declaration of Mr. Steinberg, the Court respectfully recommends that plaintiffs be awarded $25,401.24 in unpaid ERISA contributions and $2,314.35

---

[5] Citations to "Steinberg Supp. Decl." refer to the supplemental Declaration of James M. Steinberg, dated July 10, 2025 (ECF No. 19).  Another version of this declaration, with fewer documents, was submitted earlier on the same day (ECF No. 18); the Court refers to the later version that includes the same documents and additional ones, such as the Amended Statement of Damages.

in non-ERISA contributions.  (Steinberg Supp. Decl.; Am. Stmt.).

### 2.  Interest and Liquidated Damages

Pursuant to ERISA, defendant Graci is liable to the plaintiffs for interest on the amount of the unpaid ERISA contributions at the rate provided for in the plan.  29 U.S.C. § 1132(g)(2)(B).  The Trust Agreements provide that if a contributing employer defaults in the making of its contribution payments, interest shall accrue at the annual rate of 6.0%, calculated from the date the contributions were due.  (Pls.' Mem.[6] at 9 (citing Exs. E (Annuity Fund), F (Pension Fund), G (Welfare Fund), H (Training Fund))).  Based on the audit report, adjusted to account for the payments identified in Mr. Steinberg's supplemental Declaration, plaintiffs seek a total amount of $1,623.41 in interest accrued on the ERISA contributions through May 7, 2025, together with additional interest earned through the date of judgment.  (Steinberg Supp. Decl., Am. Stmt.).  Plaintiffs have calculated the interest accumulated from May 8, 2025, through June 27, 2025, as $212.95.  (Steinberg Supp. Decl., Attachment 3, at 2).  As of November 21, 2025, the date of this Report and Recommendation, 147 days have passed since June 28, 2025.  Using the formula on which plaintiffs rely in calculating the interest rate through May 7, 2025 (Madeiras Aff.[7] ¶ 6), the Court calculates that since June 27, 2025, $613.81[8] in interest has accrued on the unpaid ERISA contributions. The total interest due to plaintiffs on the unpaid delinquent ERISA contributions therefore amounts to $2,450.17.[9]

---

[6] Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion for Default Judgment Against Defendant Graci Paving Associates Inc., filed June 27, 2025 (ECF No. 16).

[7] Citations to "Madeiras Aff." refer to the Affidavit of Lisa Madeiras in Support of Plaintiffs' Motion for Default Judgment, filed June 27, 2025 (ECF No. 15). The formula used is:  "[number of days] x [interest rate (6%)] / [365 days] x [amount owed in straight + overtime contributions]."  (Id. ¶ 6).

[8] 147 days (x) 0.06/365 (x) $25,401.24 = $613.81.

With respect to the non-ERISA contributions owed, which amount to $2,314.35 (Am. Stmt.), plaintiffs seek interest accrued at the rate of 9.0% per annum in accordance with Section 5004 of the New York CPLR.  (Pl.'s Mem. at 15 (citing <u>Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Superior Site Work</u>, No. 15 CV 543, 2017 WL 639248 (E.D.N.Y. Feb. 16, 2017))).  Under New York law, where damages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. CPLR § 5001(b).  Plaintiffs have selected March 1, 2025 as the midpoint date in the deficiency period identified by the audit, citing various ERISA cases.  (Pls.' Mem. at 15 (citing <u>Alston v. Northstar La Guardia LLC</u>, No. 10 CV 3611, 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 3, 2010) (citations omitted))).  Using March 1, 2025 as the reasonable midpoint date, and counting through June 27, 2025, plaintiffs calculate that they would be entitled to interest on the non-ERISA contributions in the amount of $63.91.  (Steinberg Supp. Decl., Attachment 3, at 2).

However, the reasonable midpoint date in this case would not be March 1, 2025, but March 1, 2024.  The delinquency period at issue is July 1, 2023, through October 31, 2024.  The midpoint of this approximately sixteen-month date range (488 days) would be 244 days after July 1, 2023, or March 1, 2024.  See <u>Alston v. Northstar La Guardia LLC</u>, at *3-4 (finding that the midpoint in the delinquency period of December 22, 2008, to December 27, 2009 was June 25, 2009); <u>Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Superior Site Work</u>, 2017 WL 639248 at *9 (finding that the midpoint date in the delinquency period of July 1, 2011, to December 15, 2014, was March 23, 2013).  These courts chose dates resembling a halfway point between the start and end of the

---

[9] $1,623.41 (interest through May 7, 2025) + $212.95 (interest from May 8, 2025, to June 27, 2025) + $613.81 (interest from June 28, 2025, to November 21, 2025) = $2,450.17.

identified deficiency period.  See also Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 288 (E.D.N.Y. 2010) (finding that the midpoint between the delinquency period of October 17, 2007 and December 19, 2007, was November 17, 2007).  Given that plaintiffs cite to these precedents, but incorrectly list March 1, 2025, the Court presumes that plaintiffs made a clerical mistake in their papers by listing the midpoint of the deficiency period as one year later than the actual reasonable midpoint.  Thus, the Court considers March 1, 2024, as the reasonable midpoint date from which to calculate the prejudgment interest on the non-ERISA contributions.

Since March 1, 2024, interest has continually accumulated on the non-ERISA contributions.  As of November 21, 2025, the date of this Report and Recommendation, 631 days have passed since the reasonable midpoint date of March 1, 2024.  From March 1, 2024, to November 21, 2025, the amount of interest which has accrued on the delinquent non-ERISA contributions, according to the formula set forth by the N.Y. CPLR and used in plaintiffs' calculations (Madeiras Aff. ¶ 6), is therefore $360.09.[10]  N.Y. CPLR § 50014.

All told, Graci is liable to the plaintiffs for interest payments totaling $2,810.26[11] since the date that each contribution was owed.

Apart from interest due and owing on the delinquent contributions, Graci is required to pay statutory damages on the ERISA contributions, calculated as the greater of 1) the interest on unpaid contributions, or 2) liquidated damages as provided for under the plan that are not greater than 20% of the delinquency.  29 U.S.C. § 1132(g)(2)(C).  (See Pls.' Mem. at 9-10).  In this case, plaintiffs note that the Trust Agreements do not provide for a liquidated damages calculation, and therefore plaintiffs seek an award of statutory damages equal to the amount of interest owed on

---

[10] 631 days (x) 0.09/365 (x) $2,314.35 = $360.09

[11] This number accounts for the $2,450.17 in interest accrued on the ERISA contributions, and the $360.09 accrued on the non-ERISA contributions.

the delinquent ERISA contributions, or $2,450.17. (Id. at 10). The Court respectfully recommends awarding damages equal to the interest awarded on the delinquent ERISA contributions.

Based on a review of the CBA, the Trust Agreements, the Steinberg Declaration and supplemental Declaration and exhibits thereto, the Court respectfully recommends that plaintiffs be awarded $1,623.41 in interest owed on past due ERISA contributions through May 7, 2025; $826.76 in interest accumulated on the ERISA delinquent contributions since May 8, 2025, through the date of this Report and Recommendation; and $2,450.17 in statutory damages to reflect the total interest on the ERISA contributions. In addition, the Court respectfully recommends that plaintiffs be awarded $360.09 in interest accumulated on the non-ERISA delinquent contributions since March 1, 2024, through the date of this Report and Recommendation.

Adding the unpaid contributions to the total interest and statutory damages, as outlined above, the total amount in damages to which plaintiffs are entitled as of the date of this Report and Recommendation is $32,976.02.[12] The Court respectfully recommends that plaintiffs be awarded this amount. Should the district court adopt this Report and Recommendation, the Court recommends that the above interest amounts be adjusted based on the filing date of the district court's adoption Order, according to plaintiffs' formulae.

3. Attorney's Fees and Costs

---

[12] This number accounts for the unpaid delinquent contributions ($25,401.24 in ERISA contributions, $2,314.35 in non-ERISA contributions), the interest on all contributions ($2,450.17 in interest accrued on ERISA contributions, plus $360.09 in interest accrued on non-ERISA contributions), and statutory damages equaling the interest on the ERISA contributions ($2,450.17).

Pursuant to 29 U.S.C. § 1132(g)(2)(D) and the CBA, plaintiffs seek to collect attorney's fees and costs. (Steinberg Decl. ¶¶ 11-13). With respect to attorney's fees, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs. 29 U.S.C. § 1132(g)(2)(D). Here, the Trust Agreements also establish that the employer is liable for legal costs once the employer is in default. (Pls.' Mem. at 10-11 (citing Exs. E, F, G, H)). Plaintiffs request an award of $2,850.00 in legal fees and $530.00 in costs. (Pls.' Mem. at 12-13).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report & recommendation adopted by, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report & recommendation adopted by, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013)

14

(explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing <u>Millea v. Metro-North R.R., Co.</u>, 658 F.3d at 166); <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 166-67 (quoting <u>Perdue v. Kenny A.</u>, 559 U.S. at 553).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  <u>Id.</u> at 167 (quoting <u>Perdue v. Kenny A.</u>, 559 U.S. at 554); <u>see also</u> <u>Adusumelli v. Steiner</u>, 2013 WL 1285260, at *2.  The burden is on the party moving for attorney's fees to justify the hourly rates sought.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983).  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  <u>See</u> <u>Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (alteration in original) (quoting <u>Cabrera v. Jakobovitz</u>, 24 F.3d 372, 393 (2d Cir. 1994), <u>cert. denied</u>, 513 U.S. 876 (1994) (internal quotation marks omitted)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  <u>Blum v. Stenson</u>, 465 U.S. 866, 895 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing

15

court sits . . . '" <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).  Indeed, as the court in <u>Simmons</u> noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively." <u>Id.</u> (citations and internal quotation marks omitted); <u>see also</u> <u>Cook v. First Revenue Assurance, LLC</u>, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), <u>report and recommendation adopted</u>, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012).  In awarding attorney's fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorney's degree of skill and the Court's own experience dealing with similar claims.

Plaintiffs' counsel from Brady McGuire & Steinberg, P.C. ("the Firm") has submitted detailed billing records, as required by <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).  (Steinberg Decl., Ex. L).  The Firm seeks $2,850.00 in fees, representing 6.25 hours spent by Mr. Steinberg on the matter.  (Steinberg Decl. ¶¶ 11, 12, Ex. L).  According to his Declaration, Mr. Steinberg has been practicing in this field of law for over 30 years since February 1995, and he bills at the rate of $456 per hour.  (<u>Id.</u> ¶¶ 11, 12).

Having reviewed the Firm's billing records and being familiar with similar cases in which attorney's fees have been awarded for ERISA related litigation, the Court finds the request for 6.25 hours of work to be reasonable, and the rate of $456 per hour to be in line with similar fee awards for lawyers with the amount of experience of Mr. Steinberg.

Plaintiffs also seek an award of costs in the amount of $530, representing $405 for the filing fee and $120 for service of process fees. (Pls.' Mem. at 13). Under ERISA, an award of costs is mandatory. 29 U.S.C. § 1132(g)(2)(D); see Finkel v. Detore Elec. Constr. Co., Inc., No. 11 CV 0814, 2019 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012). Here, the Court takes judicial notice of the filing fee of $405 and finds the $120 service of process fee supported by the invoice submitted by U.S. Process Service. (Steinberg Decl., Ex. M). However, the filing fee and service fee add up to $525, not $530.

Accordingly, it is respectfully recommended that plaintiffs be awarded $2,850.00 in attorney's fees, and $525 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs are directed to serve this Report and Recommendation on the defendant and file proof of service on the docket immediately thereafter.

**SO ORDERED.**

Dated:  Brooklyn, New York
            November 21, 2025

                                          /s/ Cheryl L. Pollak
                                          Cheryl L. Pollak
                                          United States Magistrate Judge
                                          Eastern District of New York

17

18